FILED IN MY OFFICE
DISTRICT COURT CLERK
3/10/2015 8:15:23 AM
STEPHEN T. PACHECO
Jorge Montes

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**HOGARES, INC.**

     **Plaintiff,**

**vs.**                         **No.** D-101-CV-2015-00604

**THE STATE OF NEW MEXICO,**
**HUMAN SERVICES DEPARTMENT**
**OF THE STATE OF NEW MEXICO,**
**MARK PITCOCK, DEPUTY DIRECTOR**
**OF THE MEDICAL ASSISTANCE DIVISION**
**OF THE HUMAN SERVICES DEPARTMENT, and**
**JOHN DOES 1-10, in their individual capacities,**

     **Defendants.**

## COMPLAINT FOR DECLARATORY JUDGMENT, VIOLATION OF 42 U.S.C. § 1983, AND BREACH OF CONTRACT

Plaintiff Hogares, Inc. ("Hogares") complains of Defendants as follows:

### The Parties, Jurisdiction, and Venue

1.     HOGARES is a New Mexico non-profit corporation which provides behavioral healthcare services to New Mexico Medicaid beneficiaries through contracts with the Human Services Department ("HSD"), including a MAD 335 Provider Participation Agreement.

2.     Defendant The State of New Mexico is a party to the MAD 335 Provider Participation Agreement with HOGARES

3.     HSD is a department of the State of New Mexico and a party to the MAD 335 Provider Participation Agreement with HOGARES.

**Exhibit "A"**

4.     Defendant Mark Pitcock was the Deputy Director of the Medial Assistance Division of the New Mexico Human Services Department acting within his scope of employment and under color of state law at all times relevant hereto.

5.     Defendant John Does 1-10 were employed by the State acting within the course and scope of their employment and under color of state law at all times relevant hereto. HOGARES is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as John Does 1-10, and for that reason sues said Defendants, and each of them, by such fictitious names.

6.     The Court, therefore, has jurisdiction over the subject matter and venue is proper in Santa Fe County pursuant to N.M.S.A. § 38-3-1(G).

## General Allegations

### HSD's Suspension of Medicaid Payments to Hogares Without a Hearing and MFCU's Potential Six and a Half Year Investigation Violates Hogares's Due Process Rights Under the Fourteenth Amendment to the United States Constitution

7.     In February 2013, HSD contracted with Public Consulting Group ("PCG"), an independent contractor, to perform a Medicaid program integrity audit of fifteen behavioral healthcare providers, including HOGARES (the "Audit").

8.     One of the purposes of the Audit was to determine whether there was evidence that the fifteen providers were committing fraud on the Medicaid program for HSD to make a determination about whether there was a "credible allegation of fraud" in order to justify withholding payments from the providers and referring them to MFCU for criminal investigation under 42 CFR § 455.23(a).

9.     In a June 30, 2013 audit report released to the public on February 27, 2014, the State Auditor found that HSD violated its internal policy on investigations into allegations of

Medicaid fraud when HSD's Program Integrity Unit did not conduct the preliminary investigations into the fifteen behavioral healthcare providers, but the Unit's staff signed off on all fifteen referrals to MCFU.

10.     In June 2013, PCG produced a final report detailing the results of each of the fifteen provider audits.  Although PCG determined that all fifteen of the audited providers failed the audit, it nonetheless concluded that there was no evidence of widespread fraud, stating: "PCG's Case File Audit **did not** uncover what it would consider to be credible allegations of fraud, nor any significant concerns related to consumer safety." (Emphasis added.)

11.     HSD rejected PCG's determination that there was no credible evidence of fraud and directed that the above-quoted sentence be removed from the final report (the "Revised PCG Audit"), which was released to the public on January 29, 2015, by the New Mexico Attorney General, and is available at http://www.nmag.gov/home/2013-behavioral-health-audit.

12.     PCG, in conjunction with HSD, developed a scorecard for each provider, rating them between 1 ("Compliant") and 4 ("Significant Non-Compliance"), then used the scorecards to categorize the providers in Risk Tiers from 1 through 4 in the Revised PCG Audit as follows:

> 1  "Findings that include missing documents, etc." for which PCG recommended "Provide training and clinical assistance as needed."
>
> 2  "Significant volume of findings that include missing documents" for which PCG recommended "Provide trainings and clinical assistance as needed" and "Potentially embed clinical management to improve processes."
>
> 3  "Significant findings, including significant quality of care findings" for which PCG recommended "Provider training and clinical assistance as

needed," "Potentially imbed clinical management to improve processes," and

"Potential change in management.

4 "Credible Allegations of Fraud" for which PCG recommended "Mandatory

change in management."

13.     PCG ranked HOGARES in Risk Tier 2.

14.     On or about June 21, 2013, Defendants Pitcock and John Does 1-10, acting under

color of state law, made a decision to suspend Medicaid payments to HOGARES based upon a

"credible allegation of fraud" under 42 C.F.R. § 455.23(a)(1) without properly determining that

there existed a "credible allegation of fraud" against HOGARES as defined in 42 C.F.R. § 455.2:

> an allegation, which has been verified by the State, from any source, including but
> not limited to the following:…(1)fraud hotline complaints. (2) claims data mining.
> (3) Patterns identified through provider audits, civil false claims cases, and law
> enforcement investigations.  Allegations are considered to be credible when they
> have indicia of reliability and the State Medicaid agency has reviewed all
> allegations, facts, and evidence carefully and acts judiciously on a case-by-case
> basis.

15.     On or about June 21, 2013, HSD referred HOGARES, along with the other

providers, to the New Mexico Attorney General's Medicaid Fraud Control Unit ("MFCU")

based on what HSD viewed to be "credible allegations of fraud," despite PCG's findings

otherwise.  HSD provided the MFCU with a copy of the Revised PCG Audit and, pursuant to its

standard protocol, MFCU accepted the referrals and launched investigations into HOGARES and

the other audited providers.

16.     On or about June 24, 2013, HSD met with all fifteen behavioral healthcare

providers, including HOGARES, and notified them that HSD was going to suspend Medicaid

payments to all fifteen providers immediately based upon a "credible allegation of fraud"

pursuant to 42 C.F.R. § 455.23(a)(1), as stated in HSD's June 24, 2013 letter to HOGARES.

17.     HSD's June 24, 2013 letter informed HOGARES that it could request an "administrative records review" within twenty days of receipt of the letter.  HSD, however, gave HOGARES no indication of what the "credible allegation of fraud" was or information sufficient for HOGARES to respond in any meaningful way to investigate, verify, or rebut the allegation, despite that 42 C.F.R. § 455.23(a)(2)(ii) required HSD to "[s]et forth the general allegations as to the nature of the suspension action, but need not disclose any specific information concerning an ongoing investigation."

18.     HSD communicated that it was prohibited from disclosing the specific nature of the allegations against each provider, but that each provider was generally accused of inappropriate use of CPT codes, unbundling of professional services, and the possible use of deception to obtain an unauthorized benefit from both the Medicaid and SCI programs over a three-year period.

19.     HSD presented each of the fifteen providers with a heavily redacted copy of an audit summary and a letter formally advising them that HSD had made a preliminary determination that there were credible allegations of fraud concerning the provider, that a criminal investigation was pending, and that pursuant to 42 C.F.R. 455.23(a)(1), HSD was suspending payment for services effective immediately.

20.     Each provider was informed that the suspension of payments was "temporary" and would be in effect until (1) prosecuting authorities determined there was insufficient evidence of fraud or alleged fraud or willful misrepresentation by the provider, (2) legal proceedings related to the provider's alleged fraud or willful misrepresentation were completed, or (3) the provider applied for, and received, a "good cause" release of suspended payments.

21.    By letter dated June 25, 2013, HOGARES wrote a response to HSD timely requesting an administrative records review of the Medicaid payment suspension pursuant to 42 C.F.R. § 455.23(a).   Given that HSD provided no information sufficient for HOGARES to investigate, verify, or rebut the alleged "credible allegation of fraud" forming the basis for HSD's decision to suspend Medicaid payments, HOGARES could not submit evidence in support of its position.

22.    HSD responded to HOGARES by letter on or about July 15, 2013 and advised HOGARES that its request for a good cause release of suspended payments had been denied.

23.    The federal regulation allowing Medicaid payment suspension upon a "credible allegation of fraud," 42 C.F.R. § 455.23, also requires HSD to provide "administrative review" of a suspension "when state law so requires" pursuant to 42 C.F.R. § 455.23(a)(3).   The regulation, however, does not define "administrative review," but leaves it to the several States to define the scope of such a review.

24.    The MAD 335 Provider Participation Agreement incorporates the provider's right to administrative review when state law so requires under 42 C.F.R. § 455.23 and that a payment withhold based upon a credible allegation of fraud may only be "temporary."

25.    HSD has not defined "administrative review" in its regulations applicable to Medicaid payment suspensions.

26.    MFCU offered HSD a Medicaid Improvement Recommendation on or about December 23, 2009, attached as Exhibit 1, in which MFCU identified the lack of a definition for "administrative review" as the term is used in 42 C.F.R. § 455.23 in HSD's own regulations, the conflicting definitions of that term used elsewhere in Title 8 of the New Mexico Administrative Code, and recommended that HSD define "administrative review" for purposes of Medicaid

payment suspensions under 42 C.F.R. § 455.23 not to include "provider hearings" under N.M.A.C. § 8.353.2.9.

27.     "Provider hearings" under N.M.A.C. § 8.352.3.9 provide a modicum of due process safeguards in the form of notice of basis for the allegations, evidence to support them, right to counsel, and opportunity to be heard, to Medicaid providers upon certain adverse decisions by HSD, including Medicaid payment suspensions, except "a temporary payment suspension for credible allegations of fraud" under N.M.A.C. § 8.352.3.10(C)(1)(c).

28.     HSD rejected MFCU's recommendation to define "administrative review" as not including "provider hearings" on or about January 21, 2010, by letter, attached as Exhibit 2.

29.     The term "administrative review" as it is used in 42 C.F.R. § 455.23(a)(3), thus, remains undefined under New Mexico law.

30.     As a result, HOGARES and other Medicaid providers similarly situated are denied basic due process safeguards when HSD decides to suspend Medicaid payments based upon a "credible allegation of fraud" and refers the matter to MFCU.

31.     HSD's suspension of payments to HOGARES has lasted twenty months so far.

32.     MFCU's former director, Jody Curran, has stated in an affidavit executed on May 30, 2014, , filed in State ex rel The New Mexico Foundation for Open Government v. Russell, No. D-101-CV-2013-02436, attached as Exhibit 3, that it could take up to six and a half years to complete the investigations of the thirteen remaining providers, including HOGARES, who have not been cleared by MFCU.

33.     On November 25, 2013, the Honorable Raymond Ortiz, First Judicial District Court, issued an order in New Mexico Psychiatric Services, Inc. v Human Services Department, No. D-101-CV-2012-02787, attached as Exhibit 4, in which the Court ruled that HSD's

suspension of Medicaid payments to the plaintiff behavioral healthcare provider for eighteen months was not "temporary" as the term is used in 42 C.F.R. 455.23(a)(4) and failure of HSD to grant a "provider hearing" violated the provider's due process rights under the Fourteenth Amendment.

34.     On January 23, 2015, in <u>Easter Seals El Mirador v. Human Services Department</u>, No. D-101-CV-2014-01784, First Judicial District Court, the Honorable Francis J. Mathew, granted summary judgment in the plaintiff Easter Seals El Mirador's ("ESELM") favor on the same claim under the Declaratory Judgment Act which HOGARES brings here, that:

(a) the nineteen (19) month payment withhold is not "temporary" as the term is used in 42 C.F.R. 455.23(a)(4);

(b) ESELM, therefore, has a protected property interest in the withheld Medicaid payments which cannot be denied ESELM without due process of law under the Fourteenth Amendment to the United States Constitution;

(c) 42 C.F.R. 455.23(a)(3) provides that "[a] provider may request, and must be granted, administrative review where State law so requires";

(d) "Administrative review" in 42 C.F.R. 23(a)(3) means a "provider hearing" as defined in NMAC § 8.352.3.9, when, as in ESELM's case, the Medicaid payment withhold has been in effect for longer than a "temporary" period;

(e) HSD denied Plaintiff due process of law under the Fourteenth Amendment to the United States Constitution by failing to grant Plaintiff a "provider hearing" under NMAC § 8.352.3.9.

(f) HSD must provide ESELM a full "provider hearing" in which HSD has the burden of proof to prove that ESELM received a Medicaid overpayment pursuant to NMAC §

8.352.3.9, including but not limited to the information and documents required under NMAC § 8.352.3.11(I).

35.     Judge Mathew's Order memorializing the January 23, 2015 ruling, attached as Exhibit 5, was entered on March 3, 2015.

36.     HSD has withheld in excess of $2,000,000 from HOGARES for services rendered and billed, which financially devastated HOGARES and forced HOGARES to discontinue rendering services to clients.

## COUNT I

### DECLARATORY JUDGMENT FOR HSD TO CONDUCT A PROVIDER HEARING

37.     There is a dispute between the parties about whether HOGARES is entitled to a provider hearing under 42 C.F.R. § 455.23 in connection with HSD's Medicaid payment suspension.

38.     Resolution of the foregoing dispute calls for construction of the laws and regulations of the United States and New Mexico.

39.     The Court, therefore, has jurisdiction to enter a declaratory judgment resolving the foregoing dispute pursuant to the Declaratory Judgment Act, N.M.S.A. § 44-6-13.

40.     The Court further has jurisdiction to grant supplemental injunctive relief under N.M.S.A. § 44-6-9, requiring HSD to comply with 42 C.F.R. § 455.23(a)(3) and grant HOGARES a provider hearing pursuant to N.M.A.C. § 8.353.2.9.

## COUNT II

### 42 U.S.C. § 1983—VIOLATION OF THE FOURTEENTH AMENDMENT BY DEFENDANTS PITCOCK AND JOHN DOES 1-10

41.     HOGARES has a Fourteenth Amendment-protected property interest in the payments which HSD has been withholding since June 2013.

42.     The payment withhold of twenty months so far is not "temporary" as contemplated by 42 U.S.C. § 455.23(c).

43.     Defendants Pitcock and John Does 1-10, acting under color of state law, have violated HOGARES's Fourteenth Amendment due process rights by withholding payments without properly determining that there existed a "credible allegation of fraud" against HOGARES, and referring HOGARES to the MFCU, which has caused the payment suspension to last for an indefinite period of time, without giving HOGARES a full provider hearing.

44.     These Defendants' violation of HOGARES's Fourteenth Amendment due process rights have caused HOGARES damages in an amount to be proven at trial.

## COUNT III

## BREACH OF CONTRACT BY THE STATE AND HSD

45.     The MAD 335 Participation Agreement between HOGARES, the State, and HSD incorporates the provider's right to administrative review when state law so requires under 42 C.F.R. § 455.23 and that a payment withhold based upon a credible allegation of fraud may only be "temporary."

46.     The payment withhold of twenty months so far is not "temporary" as contemplated by 42 U.S.C. § 455.23(c).

47.     Defendants the State and HSD have breached the MAD 335 Participating Provider Agreement by withholding payments without properly determining that there existed a "credible allegation of fraud" against HOGARES, and referring HOGARES to the MFCU, which

has caused the payment suspension to last for an indefinite period of time, without giving HOGARES a full provider hearing.

48.     Defendants' breach of the MAD 335 Participating Provider Agreement has caused HOGARES damages in an amount to be proven at trial.

WHEREFORE, HOGARES prays for the following relief:

(1) A declaratory judgment that HOGARES is entitled to a provider hearing in connection with HSD's payment suspension and a coercive degree requiring HSD to grant HOGARES a provider hearing;

(2) Supplemental injunctive relief ordering HSD to grant HOGARES a provider hearing;

(3) A judgment, pursuant to 42 U.S.C. § 1983, in HOGARES's favor that Defendants Pitcock and John Does 1-10 violated HOGARES's Fourteenth Amendment rights, compensatory damages in an amount to be proven at trial, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

(4) a judgment in HOGARES's favor that Defendants the State and HSD breached the MAD 335 Participating Provider Agreement and caused HOGARES damages in an amount to be proven at trial; and

(5) Any other relief to which HOGARES is entitled in this action.

Submitted by:

**DAVIS | GILCHRIST | LEE**

By: **"Electronically Filed" /s/ Bryan J. Davis**
        Bryan J. Davis, Esq.
        124 Wellesley Drive SE
        Albuquerque, NM 87106
        Tel: 505-435-9908
        Fax: 505-435-9909

bryan@dglnm.com

*Attorneys for Plaintiff*

## Attorney General of New Mexico

111 Lomas Blvd. NW, Suite 300
Albuquerque, New Mexico 87102
(505) 222-9075
Fax (505) 222-9133

GARY K. KING
Attorney General

ALBERT J. LAMA
Chief Deputy Attorney General

Assign to Saunders

DEC 2 8 2009

December 23, 2009

Carolyn Ingram, Director
Medical Assistance Bureau
P. O. Box 2348
Santa Fe, New Mexico 87504-2340

Dear Director Ingram:

During the course of an investigation of a New Mexico Medicaid Provider, the Medicaid Fraud Division noticed an issue relating to billing for Medicaid services that requires attention by your office. It is believed that instances can be implemented which will save Medicaid dollars and these can be efficiently utilize Medicaid for its intended purpose, if the attached proposal is effected.

Enclosed you will find a detailed statement of the issues discovered, specific regulations and billing codes relevant, and a recommendation, as to how the Medicaid Fraud Division believes the issue can best be addressed.

Thank you for your attention to this matter. I may be reached at (505) 222-9080 if you have any questions.

Sincerely,

Elizabeth Staley
Director, Medicaid Fraud and Elder Abuse Division
Assistant Attorney General

Cc:   Case File
      LFR Quarterly Report File
      Chronological File

---

## Attorney General of New Mexico
### Medicaid Fraud Control Unit

Medicaid Program Improvement Recommendation

Date:            12/23/2009
Program Areas:   ALL
Regulations:     Title 8 and NMAC 8.352.2.1, et seq;
Billing Codes:   N/A
Explanation:

The Office of the Attorney General Medicaid Fraud and Elder Abuse Division (MFEAD) has identified instances where the New Mexico Department of Human Services is giving Medicaid "administrative hearings" (i.e. fair hearings) in instances where no "hearing" right exists (see 8.352.2.9 NMAC, et seq.).

Both Title 8 (NMAC) and the Code of Federal Regulations (CFR) provide for "administrative review". The term is not defined in the CFR, which defines to some measure and regulations. Title 8 uses the term to mean a "fair hearing", "informal conference" and "records review", somewhere interchangeably. See, for example, Title 8, Chapter 11, Part 3, section 8.113.7(C), which defines "administrative review" as "an informal process it may include an informal conference or may include only a record review". In contrast, 8.2.2.7 defines the term as a "fair hearing".

Unless this term is defined within the context of Title 8, Chapter 353, Part 2 (or a related section), the Department will continue to administer gratuitous fair hearings on unjustified issues, expending needless time and resources.

### SPECIFIC INSTANCE

Cuidando Las Familias, Inc. was a New Mexico Medicaid provider and under contract with the State pursuant to a two duly executed Provider Participation Agreement, one with the Department of Health and another with the Human Services Division. The DOH contract expired by its own terms on September 30, 2009.

An investigation by the MFEAD revealed that Cuidando Las Familias failed to properly screen Developmental Disability waiver care providers in violation of 8.314.5 NMAC, formerly MAD-736 ("DD Waiver"). New Mexico Department of Health, Developmental Disabilities Supports Division, DD Waiver definitions and service standards, and 256-17.1, et seq, NMSA, (former NMAC section 11.5) entitled Caregivers Criminal History

Page 1 of 5

EXHIBIT
1

Screening, etc.. The MFEAD identified 75 caregivers whose services were billed by the entity but were not performed by unscreened personnel. The services totaled $3,584,649.96.

The MFEAD recommended that the Medical Assistance Division of the Human Services Department implement a check hold based on the $3,584,649.96 overpayment pursuant to 42 CFR 455.23. A hold was implemented on September 7, 2009.

Pursuant to the express terms of 42 CFR 455.23(a), Colctada Las Familias "may request, and must be granted, administrative review where State law so requires".

Colctada Las Familias requested an administrative hearing in accordance with 8.352.2 NMAC (Provider Hearings) to challenge the check hold issued pursuant to 42 CFR 455.23.

Unfortunately, the Medicaid regulations set forth within Title 8 Chapter 353, Part 2 of the NMAC do not define or provide for "Administrative review." Several sections within the code do:

1. 8.2.2.7 NMAC Title 8 (Social Services), Chapter 2 (Food Assistance and Support), Part 2 (Requirements for Participation in the Child and Adult Care Food Program), which provides: "Administrative review" means the fair hearing provided upon request.

2. 8.8.5.7 NMAC Title 8, Chapter 8 (Children, Youth and Families General Provisions, Part 5 (Governing Background Checks and Employment History Verification), which provides: "Administrative Review" means an informal process of reviewing a decision that may include an informal conference or a review of written records."

3. 8.8.2.7 NMAC Title 8, Chapter 8, Part 2 (Protective Services General Policies), which provides "Administrative review" is an informal process, which may include an informal conference or may include only a record review. The administrative review does not usually include only a record review any substantive rights for the client."

4. 8.26.4.7 NMAC Title 8, Chapter 26 (Foster Care and Adoption), Part 4 (Licensing Requirements for Foster and Adoptive Homes), which provides: "Administrative review" is an informal process in which may include an informal conference or a record review, and does not create any substantive rights for the family."

5. 8.8.3.7 NMAC Title 8, Chapter 26, Part 1 (Placement Services), which provides: "Administrative review" is an informal process that may include an informal conference or record review, and does not create any substantive rights for the family."

6. 8.10.2.7 NMAC Title 8, Chapter 10 (Child Protective Services), Part 2 (Child Protective Services Investigation), which provides "administrative review" means an informal process investigation, it may include an informal conference or may include only a record review. The administrative review process does not create any substantive rights for the client."

7. 8.11.2.7 NMAC Title 8, Chapter 11 (Adult Protective Services), Part 2 (Adult Protective Services Investigations), which provides "administrative review" is an informal process, it may include an informal conference or may include only a record review. The administrative review process does not create any substantive rights for the client." (also see 8.11.4.10 NMAC)

8. 8.26.5.10 NMAC Title 8, Chapter 26 (Foster Care and Adoption), Part 5 (Child Placement Agency Licensing Standards), which provides "administrative review" is an informal process completed by the agency director or designee, which may include an informal conference or a record review. The administrative review does not create any substantive rights for the family."

9. 8.16.2.10 NMAC Title 8, Chapter 16 (Child Care Licensing), Part 2 (Child Care Centers, Out of School Time Programs, Family Child Care Homes, and Other Early Care and Education Programs), which provides: The licensee may obtain administrative review of any action taken or be conducted by a hearing officer appointed by the department's secretary."

"Administrative review" is also referenced within 8.302.2 NMAC (Title 8, Chapter 302 - Social Services, Part 2 - Billing for Medicaid Services) in the context of Medicaid billing disputes. Unfortunately, there is no clear provision of "Administrative review" related to the context of 8.372.2.1 NMAC et seq., 42 CFR 455.23 and/or 8.352.2.1 NMAC.

A hearing right was granted in the instant Colctado Las Familias case. The final hearing regulations implemented are set forth in Title 8, Chapter 352 (Provider Hearings), Part 2 (Provider Hearings).

The MFEAD maintains Title 8 effectively and needlessly broadens the definition of "review" to mean "hearing" and unnecessarily gives a hearing right when a simple submission and review process would suffice.

**Recommendation:**

The MFEAD maintains that a definition for "administrative review" should be included in the Medicaid regulations set forth in Title 8, Chapter 355, Part 2, defining the term "administrative review" to include a "review or written records" to obviate the need for unnecessary hearings.

**Potential Savings:** $1,500,000.00

Sent by B. McCracken
→ 2007 response ins. pdf"



# New Mexico Human Services Department

Medical Assistance Division
PO Box 2348
Santa Fe, NM 87504-2348
Phone: (505) 827-3103

Bill Richardson, Governor

January 21, 2010

Elizabeth Staley, Director
Medicaid Fraud and Elder Abuse Division
Assistant Attorney General
111 Lomas Blvd. NW, Suite 300
Albuquerque, New Mexico 87102

Dear Ms. Staley:

Thank you for your correspondence of December 23, 2009, which brought to our attention some issues relating to "administrative hearings" (i.e. fair hearings).

We have reviewed the details of your concerns and have determined that while there may be a need to review the Human Services Department (HSD) Provider Policies specific to "Administrative Hearings", the Medical Assistance Division (MAD) does not agree that defining the term "administrative review" to include a "review of written records" results in savings to the Medicaid program.

As you know, the vast majority of Medicaid recipients receive their health care services through a managed care program. The components you describe for a provider "administrative review" are already built into the various managed and coordinated care programs that HSD/MAD administers. Thus, this recommendation would have significant fiscal implications to the department since it would essentially require HSD to implement a completely new process for the remaining FFS population.

For HSD to adopt these recommendations and attempt to implement an administrative review process for this small group of individuals would be counter-productive with our initiatives to offset the growing gap between available state revenues and Medicaid operating costs.

The Department takes these concerns seriously and strives to ensure that all Federal and State requirements are met with a high level of performance and efficient use of our resources. We will collaborate with the Recoveries Services Bureau (RSB) and the HSD Office of General Counsel (OGC) to review the Provider Policies specific to provider administrative hearings and fair hearings, with the shared goal of the appropriate management of the Medicaid program.

Elizabeth Staley
January 21, 2010
Page two

Thank you for bringing these concerns to our attention.

Sincerely,

Carolyn Ingram, Director
HSD, Medical Assistance Division

cc: Sandra Chavez, MAD Quality Assurance Bureau Chief

**EXHIBIT**
**2**
tabbies

STATE OF NEW MEXICO  )
                      )
BERNALILLO COUNTY     )

### AFFIDAVIT OF JODY CURRAN

1.    My name is Jody Curran.  I am over the age of 18 and otherwise competent to make this affidavit.

2.    I am the Director of the Medicaid Fraud Division at the Attorney General's Office. I will officially retire from that position on May 30, 2014.

3.    I was responsible for overseeing the investigation conducted by the Attorney General's Office of 15 mental health providers operating in New Mexico.  Those providers were the subject of an audit commissioned by the Human Services Department and performed by PCG, Inc.

4.    The Attorney General's Office has completed its investigations of two of those providers – The Counseling Center and Easter Seals El Mirador.  At the conclusion of each investigation, the Attorney General's Office determined that there was insufficient evidence to support a prosecution for Medicaid fraud and thus declined to prosecute either provider.  At the same time, the Attorney General's Office released previously-withheld portions of the PCG audit report related to each provider.

5.    The Medicaid Fraud Division is still investigating the remaining 13 providers made the subject of the PCG audit report, and the Attorney General's Office continues to withhold the portions of the PCG audit report related to those providers on the basis that the withheld documents are subject to the law enforcement exception found in the Inspection of Public Records Act.

Exhibit 1

**EXHIBIT**

**3**

6.     In terms of the reasons for maintaining the confidentiality of those portions of the PCG audit report, nothing has changed in the past six months. Making public information about an ongoing criminal investigation threatens to reveal witnesses, methods, and other information that must remain sealed in order to protect the integrity of the investigation. In this case, the release of the information being withheld would reveal information to the targets of the investigations that would seriously hamper the Attorney General's ability to conduct those investigations. Most particularly, the information identifies key witnesses concerning the potentially fraudulent conduct of the targets, some of the Medicaid billing codes that have raised questions and require further investigation, and the kinds of documents that investigators will be reviewing to determine whether the provider has committed Medicaid fraud.

7.     Making this kind of information available to the target of an ongoing investigation makes it far too easy – if not likely – for the target to sanitize its files and either coordinate with witnesses to provide false testimony or arrange for the unavailability of those witnesses. These concerns persist with the 13 providers still under investigation and will persist until those investigations are complete.

8.     I am hesitant to guess as to the length of time it will take to complete all of the remaining 13 investigations. Each investigation requires a detailed review of thousands of pages of documents and hours of interviews with several witnesses. Each investigation is, of course, unique, making it particularly difficult to estimate the time necessary to complete them all. That said, the Attorney General's Office completed two investigations in one year. At that pace, all 13 remaining investigations would be complete within 6 and ½ years.

I swear that the foregoing is based on my personal knowledge and is true and correct.

5/30/14

Jody Curran

Subscribed and sworn to me on May 30, 2014.

Notary Public

OFFICIAL SEAL
ARLEEN C. SERRATO
Notary Public
State of New Mexico
My Comm. Expires 3/01/2015

My commission expires: 3/01/2015

3

FILED IN MY OFFICE
DISTRICT COURT CLERK
11/25/2013 3:12:26 PM
STEPHEN T. PACHECO
ANO

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

NEW MEXICO PSYCHIATRIC SERVICES CORP.

      **Plaintiff,**

vs.                         No. D-101-CV-2012-02787

**HUMAN SERVICES DIVISION**
**OF THE STATE OF NEW MEXICO**

      **Defendant.**

## ORDER GRANTING NEW MEXICO PSYCHIATRIC SERVICES CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON ITS REQUEST FOR DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF UNDER THE DECLARATORY JUDGMENT ACT, NMSA 1978, § 44-6-1, *et seq.*

The Court, having considered Plaintiff New Mexico Psychiatric Services Corp.'s Motion for Summary Judgment on Its Request for Declaratory Judgment and Supplemental Relief Under the Declaratory Judgment Act, NMSA 1978, § 44-6-1, filed October 10, 2012, Defendants' Response, filed May 1, 2013, Plaintiff's Reply, filed May 28, 2013, and arguments of counsel at the hearing on September 4, 2013, hereby grants Plaintiff's Motion as follows:

1. When Defendant withholds Medicaid payments from a provider based upon a "credible allegation of fraud" under 42 C.F.R. 455.23(a)(1), the withhold must be "temporary" pursuant to 42 C.F.R. 455.23(a)(4).

2. Defendant instituted a Medicaid payment withhold against Plaintiff under 42 C.F.R. 455.23(a)(1) on February 20, 2012. Nearly eighteen (18) months have passed since the payment withhold was instituted without Defendant providing any hearing or other post-deprivation mechanism for Plaintiff to challenge the "credible allegation of fraud"

1


EXHIBIT
4

supporting the payment withhold.  This length of time is not "temporary" as the term is used in 42 C.F.R. 455.23(a)(4).

3.  Plaintiff, therefore, has a protected property interest in the withheld Medicaid payments which cannot be denied Plaintiff without due process of law under the Fourteenth Amendment to the United States Constitution.

4.  42 C.F.R. 455.23(a)(3) provides that "[a] provider may request, and must be granted, administrative review where State law so requires."

5.  "Administrative review" in 42 C.F.R. 23(a)(3) means a "provider hearing" as defined in NMAC § 8.353.2.9, when, as in this case, the Medicaid payment withhold has been in effect for longer than a "temporary" period.

Accordingly, upon entry of this Order, Defendant must provide Plaintiff a "provider hearing" pursuant to NMAC § 8.353.2.9, including but not limited to the information and documents required under NMAC § 8.353.2.11(I).  The scope of the hearing is modified from NMAC § 8.353.2.10(C)(1)(c) insofar as the exception therein to the issue "of the withholding of medicaid payments by MAD when the action is directed by the state's medicaid fraud control unit" is not in effect given the Court's ruling that Plaintiff is entitled to "administrative review" of the payment withhold based upon a "credible allegation of fraud."  In other words, the evidence supporting the "credible allegation of fraud" which triggered the payment withhold are at issue in the provider hearing.

IT IS SO ORDERED.

Judge Raymond Z. Ortiz
District Court Judge

FILED IN MY OFFICE
DISTRICT COURT CLERK
3/3/2015 3:20:22 PM
STEPHEN T. PACHECO
Rachel Vannoy

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

**EASTER SEALS EL MIRADOR,**

     **Plaintiff,**

vs.                            **No. D-101-CV-2014-01784**

**HUMAN SERVICES DIVISION**
**OF THE STATE OF NEW MEXICO**

     **Defendant.**

**ORDER GRANTING EASTER SEALS EL MIRADOR'S MOTION FOR SUMMARY JUDGMENT ON ITS REQUEST FOR DECLARATORY JUDGMENT AND SUPPLEMENTAL RELIEF UNDER THE DECLARATORY JUDGMENT ACT**

The Court, having considered Plaintiff Easter Seals El Mirador's Motion for Summary Judgment on Its Request for Declaratory Judgment and Supplemental Relief Under the Declaratory Judgment Act, NMSA 1978, § 44-6-1, filed November 6, 2014, Defendants' Response, filed November 21, 2014, Plaintiff's Reply, filed December 10, 2014, and arguments of counsel at the hearing on January 23, 2015, hereby grants Plaintiff's Motion as follows:

1. When Defendant withholds Medicaid payments from a provider based upon a "credible allegation of fraud" under 42 C.F.R. 455.23(a)(1), the withhold must be "temporary" pursuant to 42 C.F.R. 455.23(a)(4).

2. Defendant instituted a Medicaid payment withhold against Plaintiff under 42 C.F.R. 455.23(a)(1) on June 24, 2013. Nineteen (19) months have passed since the payment withhold was instituted without Defendant providing any hearing or other post-deprivation mechanism for Plaintiff to challenge Defendant's evidence in support of the "credible allegation of fraud" which triggered the payment withhold. This length of time is not "temporary" as the term is used in 42 C.F.R. 455.23(a)(4).

1

**EXHIBIT**

**5**

3. Plaintiff, therefore, has a protected property interest in the withheld Medicaid payments which cannot be denied Plaintiff without due process of law under the Fourteenth Amendment to the United States Constitution.

4. 42 C.F.R. 455.23(a)(3) provides that "[a] provider may request, and must be granted, administrative review where State law so requires."

5. "Administrative review" in 42 C.F.R. 23(a)(3) means a "provider hearing" as defined in NMAC § 8.352.3.9, when, as in this case, the Medicaid payment withhold has been in effect for longer than a "temporary" period.

6. Defendant denied Plaintiff due process of law under the Fourteenth Amendment to the United States Constitution by failing to grant Plaintiff a "provider hearing" under NMAC § 8.352.3.9.

7. There is no statutory or regulatory authority for Defendant to re-refer a case to the Medicaid Fraud Control Unit ("MFCU") after MFCU has concluded that there is insufficient evidence of fraud, as Defendant did in this case after MFCU cleared Plaintiff of fraud on May 5, 2014.

Accordingly, upon entry of this Order, Defendant must provide Plaintiff a full "provider hearing" in which Defendant has the burden of proof to prove that Plaintiff received a Medicaid overpayment pursuant to NMAC § 8.352.3.9, including but not limited to the information and documents required under NMAC § 8.352.3.11(I).

IT IS SO ORDERED.

Judge Francis J. Mathew
District Court Judge

2

Submitted by:

**DAVIS, GILCHRIST & LEE, P.C.**

By: **/s/ Bryan J. Davis**
      Bryan J. Davis
      124 Wellesley Drive, S.E.
      Albuquerque, New Mexico 87106

*Attorneys for Plaintiff*

Approved by:

**NEW MEXICO HUMAN SERVICES DEPARTMENT**

By: **"Electronic Approval 03/03/15"**
      Christopher Collins
      Raymond M. Mensack
      John Emory
      Lisa Hahn-Cordes
      General Counsel, HSD
      P.O. Box 2348
      Santa Fe, NM 87504-2348